# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JASON RATCLIFF, *et al.*,

    Plaintiffs,

vs.

ERNIE MOORE, *et al.*,

    Defendants.

Case No. 1:05-cv-582

Spiegel, J.
Black, M.J.

**REPORT AND RECOMMENDATION[1] THAT (1) PLAINTIFF BLANKENSHIP'S MOTION FOR INJUNCTIVE RELIEF (Doc. 81) BE DENIED; (2) PLAINTIFF BLANKENSHIP'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Docs. 82, 96) BE DENIED; (3) BRIAN TIMMS' MOTIONS TO JOIN (Docs. 83, 97) BE DENIED; AND (4) DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 124) BE GRANTED**

Plaintiff, an inmate currently incarcerated at Ross Correctional Institution,[2] brings this action pursuant to 42 U.S.C. § 1983, seeking injunctive, declaratory, and monetary relief against several state prison officials and employees for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments.[3] The remaining Defendants, and their positions of employment with the Ohio Department of Rehabilitation and Corrections (ODRC) during the time in question, are: Ernie Moore, Warden of LeCI; J.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] However, during the time in question for his denial of exercise claim, he was incarcerated at Lebanon Correctional Institution (LeCI).

[3] Certain defendants have been previously dismissed and/or were never properly served. Defendant Delgado was dismissed by the Court (Doc. 13), and he is now deceased. Reginald Wilkinson was never properly served, (Summons returned Unexecuted, Doc. 53), and he retired from the Department of Rehabilitation and Corrections (ODRC) in April 2006. April Barr was dismissed by the Court (Order, Doc. 13), and she is the Institutional Inspector at LeCI. Cindy Lawson was never properly served (Summons returned Unexecuted, Doc. 54), and she is no longer working with ODRC.

Mullins, Mail Room Supervisor at Warren Correctional Institution; Chris Case, Investigator at LeCI; C. Benton, Chaplain at LeCI; Richard Timler, Mail Room Supervisor at LeCI; B. Bailey, Librarian at LeCI; and Gary Sims, Religious Services Administrator for ODRC.

Now before the Court are Plaintiff Blankenship's motion for a preliminary injunction (Doc. 81), "Motion For Summary Judgment on Claim For In Cell Possession of Legal Materials (Doc. 82), and "Motion For Summary Judgment on Claim of Denial of Exercise" (Doc. 96), and the parties responsive memoranda (Docs. 84-86, 124, 145). Also before the Court are inmate Brian Timms' motions for joinder (Docs. 83, 97), Defendants' motion for partial summary judgment on Plaintiff Blankenship's denial of exercise claim (Doc. 124) and the parties responsive memoranda (Docs.109, 113, 126, 145). Each motion will be addressed in turn.

  I. *Plaintiff's motion for a Preliminary Injunction (Doc. 81)*

Plaintiff Blankenship seeks an injunction requiring Defendants to permit him to possess excess legal materials within his cell. (*See* Doc. 81.) In determining whether to issue a temporary restraining order, this Court must balance the following factors:

  1. Whether the party seeking the injunction has shown a substantial likelihood of success on the merits;

  2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

  3. Whether an injunction will cause others to suffer substantial harm; and

  4. Whether the public interest would be served by a preliminary injunction.

*U.S. v. Bayshore Associates, Inc.*, 934 F.2d 1391, 1398 (6th Cir. 1991); *In Re King World Productions, Inc.*, 898 F.2d 56, 59 (6th Cir. 1990); *Project Vote! v. Ohio Bureau of Employment Services*, 578 F. Supp. 7, 9 (S.D. Ohio 1982) (Spiegel, J.).

The undersigned finds that Plaintiff has not alleged facts sufficient to warrant a preliminary injunction. Plaintiff has not alleged facts indicating a substantial likelihood of success on the merits of his constitutional claims, and he has not alleged facts showing that he will suffer irreparable harm absent a preliminary injunction. Monetary or economic harm by itself does not constitute irreparable harm. *State of Ohio ex rel. Celebrezze v. N.C.R.*, 812 F.2d 288, 290 (6th Cir.1987).

An injunction is also not warranted in this case because the purpose of a preliminary injunction, to preserve the *status quo* until a trial on the merits can be held, *see Martin*, 924 F.2d at 102, would not be served. The present *status quo* in this case is, according to Plaintiff, that he has suffered numerous violations of his constitutional rights. The remedy Plaintiff presently seeks is more than an injunction maintaining the *status quo*; he seeks an Order from this Court requiring defendants to affirmatively correct constitutional deficiencies yet to be proven. Such affirmative relief is generally beyond the scope and purpose of preliminary injunctive relief. *Id.*

Accordingly, the undersigned recommends that Plaintiff's motion for injunctive relief (Doc. 81) be denied.

   II. *The Parties' Motions for Summary Judgment*

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which might affect the outcome of the action. *Celotex,* 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Where the movant has made a properly-supported summary judgment motion, the opposing party cannot simply rely upon the allegations or denials of his pleadings. *Anderson*, 477 U.S. at 248. However, a court need not give credence to "mere allegations" nor draw inferences where they are implausible or not supported by "specific facts." *Id.* at 249; *see also Mitchell v. Toledo Hosp.,* 964 F.2d 577, 585 (6th Cir.1992). Furthermore, "self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment." *Wolfe v. Village of Brice*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999) (citing *Anderson*, 477 U.S. 242). Thus, the law is clear: conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990).

Finally, while the pleadings of *pro se* litigants are liberally construed, the fact that a plaintiff is "proceeding *pro se* does not otherwise relieve [him] from the usual

requirements of summary judgment." *Bussey v. Phillips*, 419 F. Supp.2d 569 (S.D.N.Y. 2006) (quoting *Fitzpatrick v. N.Y. Cornell Hosp.*, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003).

> A.  *Plaintiff's Motion for Partial Summary Judgment (Docs. 82)*

Plaintiff Blankenship's first motion requests partial summary judgment in order to prevent RCI employees from enforcing the ODRC excess legal materials policy (59-LEG-01). Blankenship alleges that a prison regulation restricting access to excess legal materials once every 30 days is unconstitutional. (*Id*. at p.1) Pursuant to policy, Blankenship must store his excess legal materials in a legal locker box in a vault, and he has access to these materials at least once every 30 days, and more often if necessary. (Doc. 84, Declaration of Cassie Johnson, Ex. A.) However, Blankenship seeks to store his excess legal materials in his cell the way that a television, radio, guitar, or other exempt property items are allowed to be stored. (Doc. 82, p.2.)

Blankenship argues that 59-LEG-01 is unfair considering that ODRC policies 61-PRP-01 VI (A)(3) and OAC 5120-9-33 (B) authorize exemptions to the 2.4 cubic foot in-cell property storage limits for some property such as televisions, radios, fans, shoes, and guitars. (*Id.*) He states that he needs to be free from the excess legal materials policy because he is a plaintiff in this case, and in *Eberle v. Wilkinson*, 2:03-cv-272, and *Miller v. Wilkinson*, 2:98-cv-275, and because he is helping another inmate, Brian Mann, with *Mann v. Wilkinson*, 2:00-cv-706, Mr. Mann's lawsuit. (*Id*.) Blankenship states that he has a right to possess all his legal materials in his cell because he is hindered in his legal

research and in his ability to litigate his own cases and Mr. Mann's case. (*Id.*)

Defendants maintain, however, that there are genuine issues of fact as to whether Blankenship is denied access to the court as a result of the excess legal materials policy, and as to whether the regulation is reasonably related to a legitimate penological interest. The undersigned agrees.

Moreover, in order for Blankenship to succeed on his claim of violation of his constitutional right to access to courts, he must demonstrate an actual injury. *Lewis v. Casey*, 518 U.S. 343, 350-352 (1996). Here, Blankenship has failed to allege that his access to court is impinged upon by the regulation on excess legal materials. Plaintiff's motion simply asserts that under the excess legal material regulation, his access to legal materials is a hindrance to his litigation.

In the absence of specifying how his constitutional rights have been impinged by the excess legal materials regulation, Blankenship cannot show that he is entitled to judgment as a matter of law with respect to his alleged constitutional claim for in cell possession of his excess legal materials. Thus, Plaintiff has failed to establish that such alleged hindrance in accessing his legal materials from his vault lock box has caused actual harm and/or violated his constitutional rights. He is in fact permitted to access his legal locker box, in addition to his cell locker box, when necessary for litigation. (Doc. 84, Ex. A, Johnson Aff. at ¶¶8-11.)

Moreover, Blankenship is represented by counsel in two out of three of his cases, and his ability to pursue litigation in these cases is not hindered by the storage of his

excess legal materials in a vault. Furthermore, pursuant to ODRC policy, Blankenship is not permitted to possess the legal materials of another inmate, and his jailhouse lawyering is not a reason for violating the excess legal material policy. (Doc. 84, Ex. A, Addendum B, p.5 at Section F.2.d.; 61-PRP-01, attached as Ex. B.) As noted above, Plaintiff merely demonstrates that he is annoyed by the current policy and feels inconvenienced. Thus, he fails to demonstrate any actual harm related to his current level of access to his legal materials.

Accordingly, upon careful review, the undersigned recommends that Plaintiff's motion for partial summary judgment (Doc. 82) should be denied.

> B. *The parties' cross motions for summary judgment with respect to Plaintiff's denial of exercise claim (Docs. 96, 124)*

Blankenship is also seeking summary judgment against prison officials for violating his rights under the Eighth Amendment based upon the alleged denial of exercise and recreation. Blankenship alleges that in 2004 he was required to remain in his cell and denied any form of recreation without medical justification for more than three months pursuant to a practice at LeCI prohibiting any form of exercise or recreation to inmates on "medical idle" status. (Screening Order, Doc. 13 at p.3).

Defendants, however, assert that they are entitled to summary judgment with respect to this claim because Blankenship has failed to state a claim for an Eighth Amendment violation under 42 U.S. C. §1983. Defendants further assert that they are entitled to qualified immunity. The undersigned agrees, and for the reasons that follow, recommends that Defendants' motion for partial summary judgment should be granted.

*i.*

The relevant undisputed facts, as contained in the Declaration of Amy Weiss, LeCI's Health Care Administrator ("HCA"), are as follows:[4]

The medical lay-in practice involves a medical determination that an inmate is unfit for activities including, but not limited to, work (employment) and exercise or recreation. (*See* Doc. 124, Ex. A, Declaration of Amy Weiss, ¶ 7). A doctor must order the restriction. *Id.* However, a nurse may impose a temporary three day medical restriction if necessary prior to the inmate being seen by a doctor. *Id.*

Pursuant to ODRC Protocol B-19, medical restrictions, such as no recreation or exercise, are implemented to address health problems that are likely to cause severe or life threatening consequences if the restriction is not implemented immediately. (Doc. 124, Ex. B). Moreover, medical restrictions are also imposed when patients present to the infirmary with illness or injury that requires the patient to be restricted from activity that will aggravate or impede recover. (Weiss Declaration, ¶ 9.)

---

[4] Weiss is currently employed at LeCI in Lebanon, Ohio as Health Care Administrator ("HCA"). (Doc. 124, Ex. A, Declaration of Amy Weiss, ¶ 2.) Weiss has been employed with the ODRC since March 1997, and in her current position as HCA since October 2006. During March 1997 though October 2006, Weiss held the position of Nurse at LeCI. *Id.*

Inmates on medical lay-ins remain in their current cell placement throughout the duration of their medical lay-in. (*Id*. at ¶ 10.) They are identified by a red medical bracelet, a "red band," that is placed around their wrist much like a medical bracelet that is commonly used at most hospital facilities outside of prisons. *Id*. An inmate wearing a red band will not be permitted or forced to work at his job or to exercise or recreate. *Id*. The inmate will wear the red band for the duration of the medical lay-in ordered by the doctor. The red band is removed by medical staff upon the expiration of the medical restriction order. *Id*.

When the medical restriction expires, it is the responsibility of the inmate to come to the infirmary to either have the red band removed or request an appointment for the physician to re-evaluate the need to continue the restriction. (*Id*. at ¶ 11.) Only medical staff have the authority to remove a red band, and therefore the corresponding medical restrictions, from an inmate. (*Id*. at ¶ 12.) The practice at LeCI, as stated above, is for the inmate to return to the clinic on his own initiative upon the expiration of the medical restriction order. *Id*. The date of the medical restriction order is printed on the red band bracelet so the inmate is aware of when he should report to the clinic. *Id*.

Inmate Blankenship's medical records reveal that on June 20, 2004, Blankenship indicated to a nurse at LeCI that he started a religious hunger strike on June 19, 2004, and he therefore requested a medical lay-in. (*Id.* at ¶ 14.) The nurse scheduled an appointment with the doctor. *Id*; (*See also* Doc. 124, Interdisciplinary Progress Notes ("IPN") Ex A-09; Health Services Request, Ex A-17).

On June 22, 2004, Dr. James McWeeney placed Blankenship on a three week long medical lay-in as a result of Blankenship's religiously motivated hunger strike. (*Id*. at ¶ 15.) The medical lay-in was ordered to last from Tuesday, June 22, 2004 through Tuesday, July 13, 2004. *Id*.; (*See also* Doc. 124, IPN, A-09; Doctor Order, A-07; Medical Restriction Statement, A-13).

On June 25, 2004, medical staff at LeCI had a meeting concerning Blankenship's hunger strikes and determined that staff wished to pursue evaluation for Blankenship at the Ohio State University Medical Center. (*Id.* at ¶ 16.) It was also recorded that Blankenship indicated he would refuse treatment. Subsequently, LeCI medical staff contacted Dr. Akusoba at the Corrections Medical Center ("CMC"). Arrangements were made for transfer, and the patient remained in the care of CMC until June 30, 2004. *Id*.;(*see also* Doc. 124, ODRC's Departmental Offender Tracking System ("DOTS") printout, attached as Exs. A-21 through A-23, at A-22; Problem-Oriented Progress Notes ("POPN"), A-11).

On July 7, 2004, medical staff received inmate Blankenship's Health Services Request for an extension of his medical lay-in due to his July 6, 2004 renewed religious fast. (*Id*. at ¶ 17.)(Health Services Request, A-18).

On July 12, 2004, medical staff received a second Health Services Request from Blankenship for an extension of his medical lay-in due to his renewed religious fast. (*Id.* at ¶ 18.); (*See also* Doc. 124, Health Services Request, Ex. A-19). Also, on July 12, 2004, Blankenship was admitted to the infirmary for 24 hour nursing care as a result of

his ongoing religious fast.  (*Id.* at ¶ 19); (*See also* Doc. 124, DOTS, Exs. A-22; POPN, A-11).

On July 14, 2004, Blankenship was transferred to CMC to be treated for his hunger strike.  (*Id.* at ¶ 20.); (*See also* Doc. 124, Doctor Order, Ex. A-08, POPN, A-12, DOTS, A-22.)  Blankenship remained in the care of medical professionals at CMC until July 20, 2004, at which time he returned to LeCI.  (Id. at ¶ 21);(*See also* 124, DOTS, Exs. A-22; POPN, A-12).

After July 20, 2004, the first time Blankenship brought his complaint about his red band/medical cell isolation/medical lay-in to the attention to the proper authorities was on September 14, 2008 when he filed an informal complaint.  (Weiss Declaration at ¶ 22.)  That same day, his red band was discontinued by the Health Care Administrator, Cindy Lawson.  *Id*.  After September 14, 2004, Blankenship was re-eligible for normal activity including work and exercise.  (*Id.* at ¶ 24.)

*ii.*

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*.  In establishing conditions of confinement, prison officials violate a prisoner's Eighth Amendment rights when they

-11-

manifest an unnecessary and wanton disregard for any resulting allegedly unconstitutional prison conditions. *Wilson v. Seiter*, 111 S.Ct. 2321, 2326 (1991); *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

"[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citing *Rhodes,* 452 U.S. at 347). *See also Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994). The allegedly deficient conditions of confinement must constitute a "serious deprivation of basic human needs" such as food, medical care, or sanitation. *Rhodes*, 452 U.S. at 347-48. "[P]rison officials must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 114 S.Ct. 1970, 1976 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

The Sixth Circuit Court of Appeals has recognized the need for prisoners to have access to exercise or recreation. *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). In order to hold prison officials liable for a deprivation of this need, however, a showing must be made that prison officials acted with deliberate indifference. *See Farmer v. Brennan*, No. 92-7247, 511 U.S. 825, (1994) (holding that an inmate must show that a prison official was "subjectively aware" of a substantial risk of harm to the inmate to establish that the official was "deliberately indifferent" to that risk in violation of the Eighth Amendment).

*iii.*

Here, Plaintiff has failed to provide any evidence or argument establishing that the Defendants were deliberately indifferent to his health or safety. As noted above, it was Blankenship's responsibility to return to medical upon expiration of his red band to have it removed. (*See* Weiss Declaration, Exhibit A, at ¶¶11-12, and ¶¶22-23). However, he never reported to the medical department for removal of his red band after his red band restriction expired on July 13, 2004.

Notably, on July 7th and 12th, 2004, LeCI medical staff received Blankenship's requests for an extension of his medical lay-in due to a renewed religious fast. (*Id.* at ¶17). On July 12, 2004, he was admitted to the infirmary for his religious hunger strike. (*Id.* at ¶19). On July 20, 2004, Blankenship was transferred to CMC for hunger strike cell placement. Blankenship failed to report to medical staff for the removal of his red band upon his return from CMC's 24 hour medical care. (*Id.*). It was not until September 14, 2004 that Blankenship finally communicated to medical staff his desire to be removed from medical cell isolation to any medical staff.

Thus, Defendants assert that any failure on the part of the prison physician to order removal of the red band was at most inadvertent oversight and not deliberate indifference. *See Farmer*, 511 U.S. at 838 (an inadvertent oversight cannot support liability under the Eighth Amendment.) The undersigned agrees, and recommends that the Court grant Defendants' motion for [partial] summary judgment as Defendants are entitled to judgment as a matter of law on Blankenship's Eighth Amendment claim.

Furthermore, Defendants are entitled to qualified immunity because Plaintiff has

not shown either a constitutional violation nor that what Defendants did was "objectively unreasonable" in light of clearly established law. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-1158 (6th Cir. 1996); *see also McCloud v. Testa*, 97 F.3d 1536, 1542 (6th Cir. 1996) (finding that the burden of disproving qualified immunity rests with the plaintiff).

Accordingly, Defendants have met their burden of showing the absence of genuine disputes over facts which, under the substantive law governing the claims, might affect the outcome of the action. *See Celotex*, 477 U.S. at 323. In light of Plaintiff's failure to designate specific facts in dispute, summary judgment in favor of Defendants on Blankenship's Eighth Amendment claim is proper.

> III. *Brian Timms' Motions to Join in Blankenship's Denial of Exercise Claim (Docs. 83, 97)*

Brian Timms, an inmate at LeCI, seeks to join as a Plaintiff on Blankenship's denial of recreation and exercise claim pursuant to Fed. R. Civ.P. 20(a). (*See* Docs. 83, 97.) In the event summary judgment is entered in favor of Defendants on Blankenship's denial of exercise claim, as recommended above, Timms' motions may be denied as moot. If addressed on the merits, the motions should be denied because Timms fails to state a claim arising out of the same transaction or occurrence as Plaintiff Blankenship's claim.

> Federal Rule of Civil Procedure 20(a)(1) provides in pertinent part:
>
> Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the

action.

Rule 20(a)(1) does not permit a party to join as a plaintiff for unrelated claims, and this Court has adopted a case-by-case approach to determining whether a particular factual situation constitutes a single transaction and occurrence. *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 888 (S.D. Ohio 2003). The terms "transaction or occurrence" are given broad and liberal interpretation. *Lasa Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969). However, joinder has been denied if the factual circumstances are not sufficiently similar to make a single trial desirable for the administration of their claims. *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 888 (citations omitted); *see McCormick v. Mays*, 124 F.R.D. 164 (S.D. Ohio 1988) ("Mere factual similarity is not sufficient to compel joinder.").

On September 12, 2005, Timms asserts that his treating physician designated him as medically idle, he was reevaluated a week later (although whether he was declared medically idle at this time is unclear from his motion), and then on September 28, 2005, his physician ordered a "medical lay-in" for 30 days. (Doc. 97, Timms' Motion for Joinder at p.2) Timms claims that he was prevented from exercising during the time periods the physician ordered a "medical lay-in" due to his medical condition. Timms seeks declaratory and injunctive relief (for himself and any inmate on medical idle status) declaring the medical idle policy unconstitutional, and he seeks monetary relief for his personal denial of recreation and exercise during the time that his physician placed him on medical idle status.

Here, joinder would be improper because the claims involve two separate and distinct incidents and two different persons. Blankenship's claim arises out of an incident in 2004 during which he was "denied any and all forms of recreation or exercise for more than three months without justification while on a two week medical idle status." (Doc. 96, at p.1). Plaintiff Blankenship alleges that his injury (denial of recreation) arose out of an improper operation of the "medical lay-in" practice. On the other hand, Timms alleges that a year later, in 2005, he was denied recreation or exercise while he was properly placed on a "medical lay-in." (Doc. 97, p.2). Thus, the difference between parties, time frames and circumstances makes joinder improper under Rule 20.

Accordingly, the undersigned recommends that Timms' motions to join be denied.

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED THAT**:

1. Plaintiff's motion for a preliminary injunction (Doc. 81) and motions for partial summary judgment (Docs. 82, 96) should be **DENIED**; and

2. Brian Timms' motions to join (Docs. 83, 97) should be **DENIED**; and

3. Defendants' motion for partial summary judgment on plaintiff's denial of exercise claim (Doc. 124) should be **GRANTED.**

It is further **RECOMMENDED** that the Court certify that any appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).


Date: October 15, 2008                                       s/Timothy S. Black
                                                                               Timothy S. Black
                                                                               United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JASON RATCLIFF, *et al.*,

    Plaintiffs,

vs.

ERNIE MOORE, *et al.*,

    Defendants.

Case No. 1:05-cv-582

Spiegel, J.
Black, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after the date this Report and Recommendation is stamped "filed" by the Clerk of Court. This period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).